## H. A. KEAY *versus* B. H. PALMER.

Under the statutes of February 15, 1791, and of June 13, 1796, it was not necessary, in order to entitle a prisoner to the benefit of the poor debtor's oath, that he should make application to the magistrates in writing, or that the magistrates should be together when they appointed a day of hearing.

A creditor could take no advantage of any informality in the certificate, which the magistrates gave in such a case to the jailer.

DEBT upon a bond dated January 20, 1823, for the penal sum of $611,92.

The defendant pleaded 1st, *Non est factum*, upon which issue was joined. 2d, After craving oyer of the bond and the condition, which was in substance, that R. Palmer, a prisoner in the jail in Dover, in this county, at the suit of the said Keay, should continue a true prisoner within the limits of the prison as by law established, without committing any escape until he should be lawfully discharged, the defendant pleaded that the said R. Palmer did continue a true prisoner within the limits of the prison, as by law established, without committing any escape until he was lawfully discharged.

To this plea the plaintiff replied, that the said R. Palmer, did not continue a true prisoner, but on the first day of March, 1823, escaped and went at large out of said limits without being lawfully discharged.

To this the defendant rejoined, that the said R. Palmer was committed to said jail on an execution obtained in an action on the case in favor of the said Keay against said R. Palmer, that the said R. P. at the time of his said commitment, or at any time afterwards, had not any estate to the amount of $20, except goods exempted from attachment ; that after fifteen days from the time of said commitment, to wit, on the 5th February, 1823, the said R. Palmer " did apply by petition," to two justices of the peace and of the quorum, " and after setting out the facts aforesaid to said justices, prayed to be permitted by them," to take the poor debtor's oath and be dis-

charged ; that said justices took said petition into consideration on said 5th February, and issued a notice in writing, &c. which was duly served, that said petition would be taken into consideration on the 21st February ; on the said 21st February, no sufficient objection being made, the said justices administered to the said R. Palmer, the oath as by law prescribed, in the act to exempt certain goods and chattels from attachment, passed on the 16th June, 1807, and certified to the jailer that said R. P. had taken " the oath prescribed by law in an act for the ease and relief of persons imprisoned for debt" and ought to be discharged, and thereupon the said R. P. was discharged.

To this the plaintiff surrejoined, that the said R. P. did not apply to the said justices by petition, as alleged in the rejoinder, and upon this matter issue was joined between the parties.

At the trial of the said issues here, at February term, 1828, it appeared in evidence that the defendant duly executed the bond, and that at the time stated in the rejoinder, R. Palmer made a verbal application to one of the justices to be permitted to take the poor debtor's oath, who made out and signed an order of notice to the creditor, which the said R. P. carried to the other justice and obtained his signature, but there was no interview between the justices as to the application or the issuing of the order of notice, previously to the day of hearing. Upon this evidence a verdict was taken for the plaintiff, subject to the opinion of the court upon the foregoing case.

*Woodbury*, for the defendant, contended that the verdict returned in favor of the plaintiff could not in law be sustained upon the case stated.

The real question between the parties, is, whether R. Palmer was legally discharged from the prison. It is understood that there are two objections to the legality of that discharge. 1st, That the application by R. Palm-

er to the justices to be admitted to take the poor debtor's oath was not in writing. 2d, That the justices were not together, when the order of notice was signed. To entitle the plaintiff to retain the verdict, one at least of these objections must be maintained—but we contend that neither has any legal foundation.

With respect to the first objection, we say that there is no sound reason, why the application should be in writing, and what is still more decisive, the statute does not require it to be in writing. The words of the statute are, " may apply to any two justices and pray to be admitted to take the oath." This is the language of the statute of February 15, 1791. The statute of June 13, 1796, provides that " upon petition of the prisoner and notice given to the creditor," the oath may be administered. The words *apply, pray, petition,* do not either of them imply an application in writing.

And it has never been understood that a petition in writing was necessary. The usage has been very general among the magistrates who act on such occasions, to proceed without any written application, and a decision now that a written petition is essential to the validity of their proceedings would operate with great hardship and severity in many cases.

With regard to the signature of the notice, that is merely a ministerial or formal, and not a judicial act of the justices. They have no discretion whether to issue it or not, but upon application must do it. They specify a time for the hearing, it is true ; but whether the time is reasonable or not, is settled afterwards, when both parties appear and are present.

When justices are required to do an act merely ministerial, they need not be together at all. 3 D. & E. 382, *Rex* v. *Inhabitants of H.* ; 1 Strange, 393.

It has not been understood to be necessary, that the magistrates should be together to enable them to issue a legal notice, and of course they have not generally met

for the purpose, and if it shall now be decided that such a meeting is necessary, it will expose many sureties in these cases to great losses, and occasion very severe and unexpected distress.

*Christie*, for the plaintiff, insisted,

1st, That an application in writing was essential to a valid discharge of R. Palmer, under the statutes.

2d, That the application ought to have been considered by the justices when together, and a consultation by them had thereon, before fixing the time and place for the hearing, and before issuing the notice. 6 Mod. 180 ; 2 Salk. 477, pl. 22 ; 3 D. & E. 38 ; 8 ditto, 319 ; 11 Vesey, 160 ; Burr. S. C. 136 ; 1 N. H. Rep. 100, *Tappan* v. *Bellows* ; 1 B. & P. 229 ; 2 East, 244 ; 8 ditto, 319.

3d, He contended, that as it appeared by the pleadings that the justices certified to the jailer that the said R. Palmer had taken the oath prescribed in an act for the ease and relief of persons imprisoned for debt, which oath the justices had no power to administer, the discharge was illegal for this cause.

*Mason*, for the plaintiff.

The plaintiff contends that the application to the justices ought to have been in writing, and that the proceedings are void for that defect. The statutes relating to this matter, provide for the discharge from imprisonment of debtors committed by virtue of executions issued on judgments in certain specified actions. To judgment debtors in actions other than those specified the provisions of the statutes do not extend.

The statute of 15th February, 1791, provides, that persons committed on executions in certain actions may apply to any two justices, &c. and pray to be admitted to take the oath, &c. and such justices shall notify in writing, the creditor, giving reasonable time for the attendance of the party notified.

The additional act of 13th January, 1796, which extends this relief to debtors imprisoned on executions in

certain other cases, provides, that the justices, &c. on petition of the prisoner and notice as in and by the first act is required, may proceed to administer the oath.

The act of 16th June, 1807, section 5, provides, that in all cases, where a debtor shall make application as aforesaid to be admitted to the benefit of the oath, and the application shall not prevail either in consequence of the applicant's withdrawing his application, or upon a decision of said justices, they shall, if they think it reasonable, tax costs for the creditor as is done in the superior court, and *render judgment for the same and issue execution* in due form of law. And no justices shall sustain any after application of such debtor until the costs of all former applications have been paid.

The construction of these statutes requires the application to be in writing.

These statutes are to be construed strictly, and a compliance with all their requirements is to be rigidly enforced. The general rule applicable to the case is, that the proceedings of inferior jurisdictions, and especially those that proceed summarily and not according to the course of the common law, are to be held to follow the law strictly. All doings of justices by virtue of particular statutes come within this rule. This doctrine is well laid down in 1 Chipman Rep. 37, *Paine* v. *Ely, et a ;* a case arising on the administering a similar oath for the relief of a prisoner.

The utility and apparent necessity of having the application as well as the language of the statute, sustain the plaintiff's construction.

The application is the foundation of the whole proceeding, and there is the same reason for its being in writing as for any other judicial proceedings. The object is to discharge the debtor from execution ; the importance, therefore, of the proceedings, is of equal magnitude with those which lead to his being charged in execution. It would seem extraordinary, and certainly not in analogy

with the provisions of the law in similar cases, that the very foundation of these proceedings thus leading to the discharge of the debtor from execution if he prevail, and if otherwise, to a judgment and execution against him, which is a bar to future applications, should rest in mere parol declarations. No similar case of proceedings by parol can be found. The power granted to two justices selected by the debtor himself to discharge him from execution at their discretion is most extraordinary. It might, therefore, be expected to be guarded by due formalities.

What is to be the foundation of the judgment against the debtor for costs ? Are the magistrates to recite the parol declarations made to them by the parties ? If not, how is that judgment to bar subsequent applications on the same case ?

The language of the acts as applied to the subject matter, shows that application in writing was intended. What is termed in the first act " the application of the prisoner" with a prayer to be admitted to the " oath," is in the second act termed his " petition."

The words " application" and " petition" then, as used in the acts, are synonymous ; and surely these terms import a proceeding in writing. In judicial proceedings, a petition with a prayer for relief, that may be withdrawn, and on which *judgment may be rendered*, and costs taxed, and execution issued in due form of law, and which shall bar future petitions, must be understood to be in writing.

It has been determined by this court in the construction of the statute for laying out highways, which provides that selectmen may on application to them lay out highways, that the application intended by the statute is an application in writing. 3 N. H. Rep. 338, *Prichard* v. *Atkinson*. Applications by parol had been more usual, and would also seem more consistent with the subject matter of that statute than with the statute under consideration.

But whether the statute requires the petition to be in writing or not, the defendants have in their rejoinder alleged it to be in writing, and are therefore bound to prove it so. The rejoinder is, that the debtor " did apply by petition, and after *setting out the facts aforesaid* to said justices, the said justices, on the same day, took said petition into consideration, and issued a notice, informing the creditor of *the petition and application* aforesaid, and that *the prayer* of it respecting said oath would be taken into consideration," and " that they met and further considered said petition.

*Applying by petition* in judicial proceedings always means by petition in writing. It is always so understood of petitions in chancery proceedings. Motions may be by parol, but petitions are in writing. So *setting out the facts aforesaid*, imports a statement in writing. So the prayer of the petition must mean the relief sought for. This is its technical meaning in petitions in chancery. In like manner, taking the *petition into consideration*, informing the debtor of *the petition*, and *the prayer of it* ; and again meeting and further considering *said petition*—all naturally import that the petition was in writing.

If then a petition by parol is sufficient, still as the defendants have alleged it to be in writing and have failed to prove it so, they are not entitled to judgment. Arch. 375 ; 3 Starkie, 1529, 1532, and 1542.

The opinion of the court was delivered by

RICHARDSON, C. J. We shall in the first place, examine the question, whether at the time R. Palmer took the poor debtor's oath, a poor debtor could be legally discharged from imprisonment upon taking that oath, without having made a previous application for the purpose in writing, to the magistrates before whom the oath was taken ?

The decision of this question must depend upon the true intent and meaning of the statutes on this subject which were in force at the time. There were in the

*B. Emerson.*

Keay
*v.*
Palmer.

statutes only two clauses which have any bearing upon this point. The statute of February 15, 1791, enacts, "that when any person committed on execution recovered on proper action of debt, covenant, contract, or promise, shall not have at the time, &c. estate to the value of ten pounds, such person may, at the expiration of thirty days from the time of commitment, *apply to any two justices* of the superior court, &c. and pray to be admitted to take the oath, &c."

The statute of June 13, 1796, enacts, "that when any person now committed, or who hereafter may be committed to prison upon any writ of execution issued upon a judgment rendered upon any plea of the case, trespass, ejectment, trover, or trespass on the case, shall have remained a prisoner for and during the term of thirty days, the justices, &c. *upon petition of the prisoner* and notice given to the creditor, &c. may, &c. administer the same oath, &c." We have no doubt, that under these clauses in the statutes, the most regular and safe mode of proceeding would have been to require an application in writing. But we see nothing in the language used by the legislature which makes such an application necessary. For even the word *petition*, by no means implies an application in writing. Nor do we see any thing in the nature of the transaction which necessarily requires a written application. The authority of the magistrates to make an order of notice, to hear the parties and to administer the oath, may be conceded to rest upon the application of the prisoner. It may be admitted, that if he makes no application, they have no power to intermeddle. Yet still there is not in the nature of the thing any necessity that the application should be in writing. An application without writing may still be a sufficient foundation for their proceedings. It is by no means essential, even to the safety and security of the jailer who discharges a poor debtor upon taking the oath, that there should be a written application, because when it was shown that the

debtor had taken the oath, it would be presumed that he had made an application to be admitted to take it. And sureties in bonds given for the liberty of the prison-yard, would stand on the same ground.

It is said to have been a very common practice in this county formerly, to administer to prisoners the poor debtor's oath and discharge them without any written application on their part to the magistrates for the purpose. And we have no doubt that instances of a similar practice have not unfrequently occurred in other counties. We should therefore come to the decision, that such discharges were illegal, with great reluctance, because it would probably involve many innocent prison-keepers and sureties in irretrievable ruin, and be productive of great inconvenience and distress. And we are rejoiced to find, after a most careful and attentive examination of the subject, that there is nothing in the requisitions of the statutes, or in the nature of the transaction which has made a written application necessary.

The next question to be considered is, whether the discharge of R. Palmer in this case must be adjudged illegal because the magistrates were not together, when the application was made to them?

It has been insisted, that they ought to be together when they receive the application in order to determine upon a time and place for the hearing of the parties, and also in order to issue a notice to the creditor, and as these are acts of a judicial nature, requiring deliberation, a separate application to the magistrates severally must be adjudged void.

Whether the magistrates must be together, when they receive the application, is one question ; but it is another, and a very different question, whether they must be together when the time for hearing the parties is appointed, and the notice to the creditor signed. The application is the act of the debtor, and whether it be made to them separately at separate times, or to both at the

same time, is most clearly immaterial, because, although the application might be made to them severally, they might afterwards meet and agree upon a time to hear the parties.

The questions which the plaintiff's counsel seems disposed now to raise are, whether the day of hearing ought not to have been appointed, and the order of notice made and signed by the magistrates when together. But these questions do not arise upon the case stated. The allegations that a day was appointed, and that notice was duly given are not traversed. But as these questions have been argued by counsel, and have been considered by the court, we shall now state what we conceive to be the law on the subject. We do this, because if counsel have, through mistake or misapprehension, failed to raise the questions they intended to raise, we should be disposed, upon terms, to give them an opportunity to raise them, if it should appear that they might be material in the decision of the cause, and in this case these questions may as well be decided now as upon a motion to amend.

It is very clear, that when an act, in its nature judicial, demanding the exercise of judgment and discretion is required to be done by two, they must be together when they do it. But the appointment of a time for hearing the application of a poor debtor is not a judicial act. It is no more a judicial act than the appointment of a time when a writ shall be made returnable before a justice of the peace, which is usually done by the attorney who makes the writ. On this point the case of *Haskell* v. *Haven*, 3 Pick. 404, is a direct authority.

Nor is there any pretence that the making of the order of notice was a judicial act. It was an act as perfectly ministerial as the issuing of a subpœna to summon witness, or of a notice to a party of the time and place when and where a deposition is to be taken.

We have therefore, no hesitation in holding, that in

this case the application was duly made to the magistrates and the notice duly issued.

It is said, further, on behalf of the plaintiff, that it appears by the pleadings that the magistrates certified to the jailer, that R. Palmer took the oath prescribed by an act for the ease and relief of persons imprisoned for debt, which was not the proper oath. But it is a decisive answer to this, that in another part of the pleadings it is directly averred that R. Palmer took the oath prescribed by the statute of June 16, 1807, and this averment is not in any way denied by the plaintiff.

The certificate is in the form prescribed by the statute of February 15, 1791. The form of the oath has been changed by the statute of 1807, which seems to demand a change in the form of the certificate, but there is nothing in any statute which expressly requires such a change. And we are of opinion that whether a proper certificate was given to the jailer or not, is no concern of this plaintiff, and that this objection can not avail him any thing in any shape.

And on the whole, we are of opinion, that the verdict must be set aside, and

*A new trial granted.*